Filed 12/6/23  In re A.M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | C097550 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>T.M.,<br><br>Defendant and Appellant. | (Super. Ct. No. STK-JD-DP-2020-0000176)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the nonpublished opinion filed herein on December 4, 2023, be modified as follows:

1.  On page 2, in the sentence that makes up the first full paragraph on that page, the words "conditionally reverse" are deleted and replaced with "conditionally affirm," so the sentence reads:

1

Because the juvenile court failed to make findings regarding the adequacy of the Agency's ICWA inquiry or the statute's applicability, we will conditionally affirm, and remand the matter for further ICWA compliance, including entry of the required findings.

There is no change in the judgment.

BY THE COURT:


_____/s/_____
EARL, P. J.


_____/s/_____
ROBIE, J.


_____/s/_____
BOULWARE EURIE, J.

Filed 12/4/23  In re A.M. CA3 (unmodified opinion)

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | C097550 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STK-JD-DP-2020-0000176) |
| Plaintiff and Respondent, | |
| v. | |
| T.M., | |
| Defendant and Appellant. | |

Appellant T.M. (father), father of minor A.M., appeals from the juvenile court's orders terminating parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Father contends that the San Joaquin County Human Services Agency (the Agency) and the juvenile court did not comply with the initial inquiry

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law because the Agency failed to conduct an adequate inquiry of extended paternal relatives and the juvenile court failed to make ICWA findings as to father.

Because the juvenile court failed to make findings regarding the adequacy of the Agency's ICWA inquiry or the statute's applicability, we will conditionally reverse and remand the matter for further ICWA compliance, including entry of the required findings.

**FACTUAL AND PROCEDURAL BACKGROUND**

We need not recite the underlying dependency facts in detail given the limited issues on appeal. Briefly summarized, in May 2020, N.B. (mother) gave birth to A.M., and both mother and A.M. tested positive for opioids and cannabis. While A.M. remained in the hospital with withdrawal symptoms, mother was arrested for driving under the influence with several of her other children in the car. The juvenile court issued a protective custody order for A.M., and he was later released from the hospital to father's parents.

In June 2020, the Agency filed a dependency petition for newborn A.M. and four of A.M.'s maternal half-siblings — Al.V.W. (11 years old), Av.V.W. (five years old), AleV.W. (three years old), and A.B. (23 months)[2] — alleging failure to protect (§ 300, subd. (b)), no provision for support (§ 300, subd. (g)), and abuse of sibling (§ 300, subd. (j)). The petition alleged, among other things, that mother and father had untreated substance abuse issues, unstable housing, criminal histories, and corporal punishment and domestic violence issues that prevented them from adequately supervising and protecting

---

[2] Neither mother nor A.M.'s half-siblings are parties to this appeal; they are referenced only for context. Father is not the biological father of A.M.'s maternal half-siblings, and the whereabouts of their respective biological fathers was unknown throughout the proceedings.

A.M. and his half-siblings, thereby placing them at substantial risk of serious physical harm or illness.

According to an attached Indian child inquiry form (ICWA-010(A)), mother indicated she may have Indian heritage with an unknown tribe and father denied having Indian ancestry. Based on this inquiry, the social worker concluded there was reason to believe A.M. was or may be an Indian child.

Mother subsequently signed a parental notification of Indian status form (ICWA-020) reaffirming that she may have Indian ancestry but was unsure of the tribe. She signed a second ICWA-020 form stating that one or more of her parents, grandparents, or other lineal ancestors is or was a member of a federally recognized Choctaw tribe. Father signed an ICWA-020 form indicating that none of the listed indicia[3] applied to suggest A.M. was an Indian child.

Based on this information, the Agency notified the ICWA social worker of mother's alleged tribal ancestry and the upcoming detention hearing so the information could be relayed to the Bureau of Indian Affairs (BIA). The detention/jurisdiction report stated that after the petition was filed the Agency would file an ICWA-030 form notifying all federally recognized tribes and the BIA.

At the detention hearing in June 2020, the juvenile court found father to be A.M.'s biological father, and detained A.M. and his maternal half-siblings; the court placed A.M. with the paternal grandparents who were already caring for him. During the hearing, the

---

[3] The indicia included: (1) that father is or may be a member of, or eligible for membership in, a federally recognized Indian tribe; (2) that A.M. is or may be a member of, or eligible for membership in, a federally recognized Indian tribe; (3) one or more of father's parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe; (4) that either father or A.M. was a resident of or was domiciled on a reservation, rancheria, Alaska Native village, or other tribal trust land; (5) that A.M. is or has been a ward of tribal court, or (6) that either parent or A.M. possesses an Indian identification card indicating membership or citizenship in an Indian tribe.

juvenile court asked mother and father about Native American heritage. Father again denied having any and mother responded that she had Choctaw heritage but was not registered. While the paternal grandfather also attended the hearing, the court did not ask him about potential paternal Native American ancestry.

In July 2020, father submitted on jurisdiction based on amended petition allegations. The court found the petition as amended true as to father, and continued jurisdiction as to mother. The court did not inquire about the ICWA during the hearing. Mother later admitted amended petition allegations at a hearing in which the juvenile court again did not address the ICWA.

On August 25, 2020, the Agency filed an ICWA-030 form for A.M. giving notice of an ICWA hearing on November 11, 2020.[4] The form stated that A.M. might be eligible for membership in the Choctaw or Yaqui tribes through mother and listed "[n]o information available" for tribal affiliations through father. The form included the names, addresses, and birthdates of mother and father, as well as the names, addresses, birthdates, and dates of death, if known, of the maternal and paternal grandmothers, the maternal and paternal grandfathers, and the maternal and paternal great-grandmothers and great-grandfathers. The Agency sent the ICWA-030 notice to the BIA, the Choctaw Nation of Oklahoma, the Mississippi Band of Choctaw Indians, the Jena Band of Choctaw Indians, and the Pascua Yaqui Tribal Council. The notice included copies of mother's and father's birth certificates, mother's ICWA-020 form, and the petition.

A September 2020 disposition report discussed the Agency's ICWA inquiry efforts. The report reiterated that mother and father had signed ICWA-020 forms, claiming Choctaw heritage and no Native American ancestry, respectively, and concluded that based on the current information, there was insufficient information for

---

**4** Nothing in the record shows the November 2020 ICWA hearing actually occurred as noticed.

there to be " 'reasons to know' " the child/family was ICWA eligible.  The report also noted that the Agency had received a response from the Choctaw Nation of Oklahoma, which had concluded that based on the current information A.M. did not qualify for membership in the tribe and that the ICWA did not apply at that time.

While the disposition report discussed father's family background, referencing father's parents, three siblings (one of whom was deceased), a half-sibling with whom he was not in contact, and another minor child who also lived with his parents, it did not disclose any Agency efforts to contact father's extended family to inquire about Native American heritage.

At the October 2020 disposition hearing, the parents submitted, and the juvenile court adopted the disposition report's proposed findings and orders, ordered services for the parents, and set the matter for further review in March 2021.  The court did not make any oral ICWA findings at the hearing, and the adopted written findings and orders do not reference or otherwise discuss the ICWA.

Shortly after the disposition hearing, the Agency filed a "Declaration of Efforts to Identify Tribal Affiliation" for A.M., requesting that the juvenile court make a ruling on the ICWA.  According to the declaration, 60 days had passed since the Agency sent the BIA the ICWA-030 notice and the Agency had received no response.  All of the notified Choctaw and Yaqui tribes had responded that A.M. was not a member of nor eligible for membership in each of those tribes based on the information provided in the ICWA notice.

A March 2021 status review report stated that there was no reason to believe A.M. or his maternal half-siblings may be Indian children within the meaning of the ICWA. As to A.M., the report noted father's prior denial of Indian heritage and the tribes' negative responses to mother's claimed Native American heritage.  Because none of the maternal half-siblings' fathers participated in the dependency proceedings or filed ICWA-020 forms, the Agency inquired with extended family members for some of

5

mother's other children. The Agency, however, did not contact any of father's extended relatives regarding A.M.'s potential Indian ancestry.

The status report included proposed findings and orders stating that, "[t]he children may be Indian children within the meaning of the [ICWA], and that notice of the proceedings has been given as required by law." At the March review hearing, the juvenile court adopted the Agency's proposed findings and orders, continued the children as dependents, extended reunification services, and set the matter for further review in June 2021.

The Agency's June 2021 status review report recommended continuing services to mother and father, and included the same information regarding the Agency's efforts to determine whether the ICWA applied. The Agency reiterated its conclusion that there was no reason to believe the children may be Indian children based on current information. However, the report's proposed findings and orders stated that the children may be Indian children within the meaning of the ICWA, that notice of the proceedings had been given as required by law, and that proof of such notice had been filed with the court.

At the June 2021 review hearing, the juvenile court adopted the status report's proposed findings and orders and set the matter for further review in December 2021. Shortly after the hearing, father relapsed on alcohol and methamphetamine, and thereafter failed to consistently visit A.M.

A December 2021 status review report recommended terminating reunification services. The report showed no change in the available ICWA information. The report's proposed findings and orders did not reference the ICWA.

Following a contested hearing in January 2022 in which father, mother, and the social worker (among others) testified, the juvenile court found by clear and convincing evidence that there was not a substantial probability of returning the children to the parents' physical custody within 18 months of detention, and that returning the children

6

to the parents created a substantial risk of detriment to their safety, protection, and physical and emotional well-being. The court adopted the Agency's proposed findings and orders (which did not refer to the ICWA), terminated the parents' services, continued the children as dependents, and set a section 366.26 hearing.

The Agency's section 366.26 report recommended terminating parental rights to free A.M. for adoption. The paternal grandparents were willing to adopt A.M. The report reiterated the same information regarding the Agency's ICWA efforts as to A.M., and again concluded there was no reason to believe he was an Indian child within the meaning of the ICWA. The attached proposed findings and orders stated, among other things, that the children were likely to be adopted, that it was in the minors' best interest and not detrimental to terminate parental rights, and that none of the exceptions pursuant to section 366.26, subdivision (c)(1) existed. The findings and orders did not refer to the ICWA.

A June 2022 status review report recommended adoption by the paternal grandparents as the permanent plan for A.M.[5] The report included no new ICWA information, and continued to assert there was no reason to believe any of the children were Indian children. The June status report's proposed findings and orders, however, did not state whether the ICWA did or did not apply or otherwise address the Agency's ICWA efforts.

At the section 366.26 hearing in October 2022, the juvenile court terminated parental rights, found A.M. adoptable, and selected adoption as his permanent plan. The court adopted the findings and orders contained in the section 366.26 report, including the absence of any exceptions to terminating parental rights. In November 2022, the

---

[5] The paternal grandparents were also willing to adopt two of A.M.'s maternal half-siblings who had been placed with them since March 2022.

juvenile court signed a written order terminating parental rights and freeing A.M. for adoption by his paternal grandparents. Father timely appealed.

## DISCUSSION

Father contends that, although he was asked about and denied Native American ancestry, the Agency and the juvenile court nonetheless failed to fully comply with the inquiry requirements of the ICWA because known paternal relatives, including his parents who participated in the dependency proceedings, were not asked about possible Native American ancestry. He further contends that the record does not show the juvenile court made required ICWA findings as to him.

The Agency concedes it did not inquire about Indian ancestry with extended paternal relatives and that the juvenile court did not make an express finding regarding the ICWA, but it asserts that further inquiry with father's paternal relatives was unlikely to bear meaningfully on whether A.M. was an Indian child and that the record shows the juvenile court implicitly found the ICWA did not apply. Even if the court erred, the Agency argues that any alleged errors were harmless because A.M. was ultimately placed for adoption with the paternal grandparents and biographical information about father and his ancestors was included on the ICWA notices sent to the tribes identified by mother, with each responding that A.M. was not eligible for tribal membership in those tribes.

After reviewing the record, we shall conditionally reverse and remand for further ICWA compliance and findings.

A.    *Applicable Law*

The "ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation," furthering "the federal policy ' "that, where possible, an Indian child should remain in the Indian community . . . ." ' " (*In re W.B.* (2012) 55 Cal.4th 30, 48.)

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian

8

children from their families, and by permitting tribal participation in dependency proceedings." (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The statute's major purpose is to protect " 'Indian children who are members of or are eligible for membership in an Indian tribe.' " (*Ibid.*) " '[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the [child welfare] agency nor the court plays any role in making that determination' " (*In re E.C.* (2022) 85 Cal.App.5th 123, 139-140), which often requires providing a tribe with extensive biographical data (i.e., information about ancestors and ancestry). (*In re T.G.* (2020) 58 Cal.App.5th 275, 294.)

The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) Under the ICWA, an Indian tribe has the right to intervene or a qualified right to transfer a proceeding to its jurisdiction in certain involuntary actions involving an Indian child residing off the reservation. (25 U.S.C. § 1911; *In re Isaiah W.* (2016) 1 Cal.5th 1, 8.) To that end, the juvenile court and the child welfare agency have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741-742; § 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).)[6]

California law implementing the ICWA imposes requirements to protect the rights of Indian children and their families and tribes. (See §§ 224-224.6.) "[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the [child welfare] [a]gency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian

---

[6]     Further undesignated rule references are to the California Rules of Court.

child.  [Citation.]  Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [a]gency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'  [Citation.] Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

"The duty of initial inquiry applies in every dependency proceeding."  (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678.)  That duty begins at the commencement of a child custody proceeding and requires the juvenile court to ask each participant whether he or she knows or has reason to know that the child is an Indian child.  (*Id*. at pp. 678-679; see also rule 5.481(a).)

The duty of further inquiry is triggered when there is " '[r]eason to believe that an Indian child is involved.' "  (*In re Ricky R., supra*, 82 Cal.App.5th at p. 679.)  The "reason to believe" standard is broadly interpreted (*In re M.E.* (2022) 79 Cal.App.5th 73, 84), and "exists whenever the court or [child welfare agency] has 'information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.' [Citation.]  The required further inquiry includes interviewing the parents and extended family members to gather the information necessary for an ICWA notice, contacting the Bureau of Indian Affairs and State Department of Social Services to gather the names and contact information of the pertinent tribes, contacting the tribes, and contacting any other person who may reasonably be expected to have information regarding the child's membership status or eligibility."  (*Ricky R.*, at p. 679; see § 224.2, subd. (e); rule 5.481(a)(4).)

When there is reason to believe a child is an Indian child within the meaning of the ICWA, the juvenile court must ultimately determine whether the child welfare agency (1) conducted " 'proper and adequate further inquiry,' " and (2) provided the court with a sufficient factual basis upon which to conclude that the child was or was not an Indian

child.  (*In re K.H.* (2022) 84 Cal.App.5th 566, 605.)  "If the court makes a finding that proper and adequate further inquiry and due diligence . . . have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that the [ICWA] does not apply to the proceedings . . . .  The court shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry pursuant to Section 224.3."  (§ 224.2, subd. (i)(2).)

In its filings with the juvenile court, the child welfare agency must, on an ongoing basis, include "a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes."  (Rule 5.481(a)(5).)  The duty to develop information concerning whether a child is an Indian child rests with the court and the child welfare agency, not the parents or members of the parents' families.  (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431; *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 785.)

B.     *Failure to Make ICWA Findings*

Father contends the juvenile court failed to make adequate ICWA findings as to him, including finding the Agency satisfied its inquiry obligations or whether the ICWA applied.  The Agency concedes the juvenile court failed to make express ICWA findings, but argues the juvenile court implicitly found the ICWA did not apply.  Father has the better argument.

A juvenile court must make findings as to ICWA's applicability, and its failure to do so is an error.  (*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 704-705.)  The findings may be express or implied.  (*In re Asia L.* (2003) 107 Cal.App.4th 498, 506.)  When they are implied, the record must " 'reflect that the court considered the issue and decided whether ICWA applies.' "  (*In re G.A.* (2022) 81 Cal.App.5th 355, 361, review granted Oct. 12, 2022, S276056; see also *In re Asia L.*, at p. 506.)

11

In *Asia L.*, for example, the appellate court concluded the juvenile court implicitly found the ICWA did not apply when it "expressly found that 'notice had been given pursuant to ICWA' and then proceeded to terminate appellants' parental rights under the usual rather than the heightened ICWA standards." (*In re Asia L., supra*, 107 Cal.App.4th at p. 506.) In *In re A.M.* (2020) 47 Cal.App.5th 303, 313, 318, the appellate court found the juvenile court implicitly found the ICWA did not apply when it terminated the mother's parental rights and found the child adoptable. But in that case the juvenile court had made previous *express* findings the ICWA did *not* apply prior to the section 366.26 hearing, and the hearing report noted no new information had been provided.

After reviewing the record, we cannot conclude that the juvenile court made implied ICWA findings.

The Agency initially reported that A.M. may be an Indian child within the meaning of the ICWA. Although several of the Agency's subsequent reports included information about the ICWA and concluded that the ICWA did not apply, it appears the Agency so concluded based solely on father's denial of Indian ancestry without any inquiry of his extended family even though A.M. was placed with the paternal grandparents and they were easily accessible. The March and June 2021 status reports, moreover, both included express findings, which the juvenile court adopted, that the children may be Indian children within the meaning of the ICWA. As far as we can tell, the juvenile court did not further address the ICWA after finding that the ICWA may apply, nor did the court ever address the adequacy of the Agency's ICWA inquiry efforts. Thus, we cannot properly conclude the juvenile court considered the issue further and implicitly decided that the Agency's inquiry was adequate or that A.M. was not an Indian child, especially after expressly finding that A.M. may be an Indian child within the meaning of the ICWA.

12

The juvenile court erred in failing to make these findings, and we decline to imply ICWA findings on this record.

C.     *The Agency's Inquiry and Harmless Error*

The parties agree that the Agency and the juvenile court have an affirmative and continuing duty to inquire whether a child is or may be an Indian child, and that under section 224.2, subdivision (b), this inquiry duty includes, but is not limited to, asking the parents *and* extended family members whether the child is, or may be an Indian child.  It is undisputed that neither the Agency nor the juvenile court asked any of A.M.'s extended paternal relatives, including his paternal grandparents with whom he was placed and who were present for at least some of the dependency hearings, about any potential Native American heritage.

The Agency suggests there can be no prejudice from failing to inquire with A.M.'s extended paternal relatives because further inquiry was unlikely to bear meaningfully on whether A.M. was an Indian child.  Because father denied Indian ancestry below, and has not made any proffer regarding Indian ancestry on appeal, the Agency argues any error was harmless.

Courts have generally agreed that reversal for an initial inquiry error is dependent on showing prejudice, or a miscarriage of justice, but approaches for assessing prejudice have varied.  (See, e.g., *In re E.V.* (2022) 80 Cal.App.5th 691, 698; *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted Sept. 21, 2022, S275578; *In re J.C.* (2022) 77 Cal.App.5th 70, 80; *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069; *In re Benjamin M., supra*, 70 Cal.App.5th at p. 744; *In re G.A., supra*, 81 Cal.App.5th 355, review granted.) The California Supreme Court has granted review on this issue in *In re Dezi C., supra*, 79 Cal.App.5th 769.

In the meantime, given the record, the lack of ICWA findings, the remedial purpose underlying the ICWA and related California law intended to protect third party rights, and that it was the Agency's and the juvenile court's duty, rather than father's, to

fully develop ICWA information (*In re Antonio R., supra*, 76 Cal.App.5th at p. 431; *In re Elizabeth M., supra*, 19 Cal.App.5th at p. 785), we apply the analytical framework set forth by the California Supreme Court in *In re A.R.* for assessing harm and conclude the error is prejudicial. (*In re A.R.* (2021) 11 Cal.5th 234, 252-254 [declining to apply an outcome-focused "likelihood-of-success condition," and explaining that "[f]or a parent whose attorney has incompetently failed to file a timely appeal, the relevant injury is not denial of any specific substantive appellate victory; it is the opportunity to appeal at all"].)

That A.M. ultimately was placed with his paternal grandparents who planned to provide permanency through adoption, which relative placement would have been the first placement preference if A.M. had been found to be an Indian child (25 U.S.C. § 1915(a)),[7] does not change our prejudice conclusion. This is because the Agency's argument fails to address whether, on this record, a tribe could have possibly been prevented from seeking intervention, transfer to tribal court, or tribal customary adoption. (*In re A.W., supra*, 38 Cal.App.5th at p. 662 [the ICWA protects interests of Indian children by permitting tribal participation in dependency proceedings].)

Likewise, that some paternal relative information was included on the ICWA notices to the tribes in which mother claimed heritage fails to acknowledge that further inquiry with extended paternal relatives may have revealed tribal ancestry for father in *other* tribes that were never given notice.

We therefore remand the case to the juvenile court for further proceedings to address compliance with the inquiry and notice provisions of the ICWA and to enter new orders regarding the applicability of the ICWA.

---

[7] The ICWA's placement preferences are, absent good cause to the contrary: (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families. (25 U.S.C. § 1915(a).)

14

# DISPOSITION

The orders terminating parental rights are conditionally affirmed subject only to full compliance with the ICWA as described in this opinion. The matter is remanded for the juvenile court to determine whether compliance with the ICWA has occurred, and to enter ICWA findings. If, on remand, the minor is determined to be an Indian child as defined by the ICWA, and the juvenile court determines the ICWA applies to this case, the court shall vacate its previous orders terminating parental rights and conduct further proceedings consistent with the ICWA, including a new section 366.26 hearing. (25 U.S.C. § 1914; § 224, subd. (e).)

/s/
EARL, P. J.

We concur:

/s/
ROBIE, J.

/s/
BOULWARE EURIE, J.

15